# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff/Appellee,<br>vs.<br><br>AGUSTIN VASQUEZ-OLEA<br><br>　　　　　　　Defendant/Appellant. | CASE NO. 10cr1754-LAB<br><br>**ORDER AFFIRMING DECISION** |

Agustin Vasquez-Olea appeals a verdict returned by Magistrate Judge Battaglia after a bench trial. Judge Battaglia found Mr. Vasquez-Olea guilty of illegal entry into the United States and sentenced him to 90 days in custody. Mr. Vasquez-Olea raises three issues on appeal. The first is whether certain testimony by Customs and Border Patrol Agent Tobar should have been excluded. The second is whether statements Mr. Vasquez-Olea made prior to being read his *Miranda* rights should be suppressed. The third is whether the government presented sufficient evidence of Mr. Vasquez-Olea's alienage.

## I.   Background Facts

Early in the morning of April 28, 2010, early in the morning, a sensor located a few yards north of the United States-Mexico border activated. At 5:30 a.m., approximately two miles north of the border, a second sensor activated along a known smuggling trail. (Tr. 31, 63.) At 5:45 a.m., Customs and Border Patrol Agent Steven Barr checked the morning's

1 sensor logs, and he drove to the second sensor location around 7:30 a.m. There, Agent
2 Barr found muddy footprints, broken branches and debris leading north into the mountains.
3 He hiked the trail and tracked the "solid unbroken line of muddy footprints" until around 9:30
4 or 10:00 a.m., at which time he found a group of nine people, including Mr. Vasquez-Olea,
5 lying in tall brush. (Tr. 38-39.) Agent Barr testified that the group "looked as though they
6 were going to try to get up and run." (Tr. 39.) He drew his pistol, ran in the direction of the
7 group, and ordered them to remain on the ground. He asked each of them what country
8 they were from and whether they had immigration documents. Mr. Vasquez-Olea responded
9 that he was from Mexico and did not have any immigration documents.

10 Agent Barr arrested the members of the group and led them to a road where other
11 agents picked them up and drove them to a Border Patrol station. At the station, Mr.
12 Vasquez-Olea waived his *Miranda* rights before speaking with Customs and Border Patrol
13 Agent Robert Tobar. During the interrogation, Mr. Vasquez-Olea said he was born in and
14 was a citizen of Mexico, and that he did not have the papers to enter the United States
15 legally. Mr. Vasquez-Olea was held at the Metropolitan Correctional Center (MCC) in San
16 Diego.

17 On May 11, 2010, Mr. Vasquez-Olea placed a phone call from the MCC to two
18 individuals. During the call, which was in Spanish and was recorded, Mr. Vasquez-Olea
19 admitted he had entered the United States illegally and that he planned to attempt a re-entry
20 upon release. At trial, a technician from the MCC explained how each inmate used a unique
21 PIN number to make calls and that all calls are recorded in the ordinary course of business.
22 An unnamed DEA agent transcribed and translated this "jail call," and Agent Tobar testified
23 at trial both that the voice on the recording belonged to Mr. Vasquez-Olea and that the
24 translation was accurate.

25 The trial took place on June 3, 2010. Two days before the trail, the government
26 provided defense counsel with a transcript of the jail call. The day before trial, the
27 government notified Mr. Vasquez-Olea's attorney that it planned to call Agent Tobar not only
28 to testify about the post-arrest interview, but also about the accuracy of the translation of the

jail call. Mr. Vasquez-Olea objected to Agent Tobar's testimony, arguing that notice of Agent Tobar's expert testimony (translating from Spanish to English) was insufficient because it was untimely and did not adequately disclose the content of the expert testimony. Judge Battaglia overruled the objection.

After the government concluded its case, Mr. Vasquez-Olea moved for judgment of acquittal based on Rule 29 of the Federal Rules of Criminal Procedure, arguing that the government had provided insufficient evidence of his alienage. Specifically, he argued that the government had not adequately corroborated his post-arrest, which were the only direct evidence of his alienage. Judge Battaglia denied the motion because the facts surrounding Mr. Vasquez-Olea's arrest corroborated the statements.

Judge Battaglia found Mr. Vasquez-Olea guilty, and this appeal followed.

## II.     **Admissibility of Agent Tobar's Testimony**

### *A.     Standard of Review*

Like other evidentiary rulings, "a district court's rulings on the admissibility of expert testimony are reviewed for an abuse of discretion." *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000). An error of law is an abuse of discretion. *United States v. Ortego-Asciano*, 376 F.3d 879, 883 (9th Cir. 2004). Adverse verdicts will be reversed for an abuse of discretion only if such error more likely than not affected the verdict. *United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004).

### *B.     Discussion*

Mr. Vasquez-Olea makes two arguments as to why Agent Tobar's testimony should be excluded. First, Mr. Vasquez-Olea argues that Agent Tobar was testifying as an expert and that he was prejudiced by inadequate notice under Federal Rule of Evidence 702 and Federal Rule of Criminal Procedure 16. The former provides that if "specialized knowledge will assist the trier of fact to understand the evidence . . . a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed. R. Ev. 702. The latter requires the government to give "the defendant a written summary of any testimony that the government intends to use under

Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial" if the defendant requests the information (and Mr. Vasquez-Olea did make this request). Fed. R. Cr. Pro. 16(a)(1)(G). Second, Mr. Vasquez-Olea argues that Agent Tobar is not qualified to give expert testimony on a Spanish-English translation.

Addressing the second argument first, there is no doubt that Agent Tobar is qualified to make a Spanish-English translation as an expert witness. Mr. Vasquez-Olea argues Agent Tobar is unqualified by comparing his qualifications to those of a certified court translator as outlined in *United States v. Bailon-Santana*, 429 F.3d 1258 (9th Cir. 2005). But the issue in *Bailon-Santana* was whether the defendant's waiver of his right to a jury trial was voluntary given that his *attorney* translated the waiver form, and the court indicated a preference for certified translators who "must pass a rigorous written and oral examination, which requires native-level mastery of both English and Spanish." *Id.* at 1260.

This case is different. Mr. Vasquez-Olea had access to both the audio recording of the jail call and the transcripts prior to trial (Tr. 21), and he took advantage of the opportunity to challenge Agent Tobar's translation during trial. (Tr. 119-122.) The concerns present in *Bailon-Santana* simply aren't present here. Agent Tobar's qualifications are similar to those of the expert witness in *United States v. Abonce-Barrera*, 257 F.3d 959 (9th Cir. 2001), cited by Mr. Vasquez-Olea. In *Abonce-Barrera*, the expert in question was a Drug Enforcement Agency agent who was a native Spanish speaker and had taken a large number of college-level courses in Spanish and Latin American studies. *Id.* at 964. He had also used his translation skills in various professional contexts. *Id.* The trial court qualified him as an expert to testify about the translation of recorded conversations, and the Ninth Circuit approved. Similarly, Agent Tobar is a native Spanish speaker and regularly translates while on duty. District Courts have wide discretion to certify experts, and Agent Tobar's qualifications are certainly sufficient. See *id.*

In response to Mr. Vasquez-Olea's first argument — that he did not receive proper notice of Agent Tobar's expert testimony — the prosecution responds: (1) that Agent Tobar was not an expert, (2) that even if he was an expert, they provided adequate notice under

Fed. R. Cr. Pro. 16, and (3) that even if they did not provide adequate notice, Mr. Vasquez-Olea cannot show prejudice. The Court sees no reason to address (1) and (2) because it agrees with (3). Even assuming Agent Tobar testified as an expert on Spanish-English translation,[1] and that Mr. Vasquez-Olea did not receive proper notice of his testimony under Federal Rule of Criminal Procedure 16,[2] the Court finds no prejudice.

"[A] violation of Rule 16 does not itself require reversal, or even exclusion of the affected testimony." *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1247 (9th Cir. 1997). Rather, Mr. Vasquez-Olea must "show how or why the verdict would have been different" if he had received earlier notice of the translated jail call transcript, or notice that Agent Tobar was going to verify the translation's accuracy. *See id.*; *see also Pang*, 362 F.3d at 1192 ("Even if we find error, we will only reverse if an erroneous evidentiary ruling 'more likely than not affected the verdict.'" (quoting *United States v. Angwin*, 271 F.3d 786, 798 (9th Cir. 2001)).

To show prejudice, Mr. Vasquez-Olea states that he was "deprived . . . of an opportunity to challenge the evidence against him." (Doc. No. 34 at 8.) He then relates the facts of *Abonce-Barrera*, in which the defendant received several drafts of the foreign language transcripts six months before his trial. But there were three recordings in *Abonce-Barrera*, all captured by an undercover informant wearing a hidden wire, the recordings were apparently hard to hear, and the defendant challenged both the transcription and the translation of the recordings. By contrast, Mr. Vasquez-Olea doesn't challenge the transcription of the recording in this case, and the government specifically identified the portions it planned to introduce, which were only five minutes long. Most importantly, Mr.

---

[1] The Court is skeptical that every Spanish-English translation requires the testimony of an expert. Agent Tobar testified both to the translation of the jail call and to the substance of the post-arrest interview that he conducted in Spanish, and it's telling that Mr. Vasquez-Olea appears not to object to the latter.

[2] The record indicates that Mr. Vasquez-Olea knew that the jail call would used as evidence at least two days before the trial, which is when he received a complete transcription and translation of the call. (Tr. 21.) Mr. Vasquez-Olea learned that Agent Tobar would be verifying the accuracy of the translation the day before the trial. (Tr. 22.) The government used about five minutes of the recorded conversation, which they identified the day before trial.

1 Vasquez-Olea does not demonstrate how he could have challenged the evidence had he been given more time to prepare for it. Thus, even assuming the government gave improper notice of expert testimony, Mr. Vasquez-Olea has not shown that this violation "more likely than not" affected the verdict.

Mr. Vasquez-Olea also argues that the jail call helped to corroborate his other post-arrest statements regarding his alienage (Doc. No. 34 at 13), which presumably prejudiced him because the admissions about his alienage would otherwise be uncorroborated and the government could not adequate establish his alienage for the purpose of proving his offense. The Court is not convinced. First, as discussed below, the Court does not think the jail call is required to corroborate his post-*Miranda* admissions of alienage. Second, the inquiry is not whether the verdict would have been different had the jail call been excluded, but rather whether "the verdict would have been different had the government complied with the discovery rules." *Figueroa-Lopez*, 125 F.3d at 1247.

In sum, the Court finds no prejudice based on the alleged — and for the purposes of this discussion, *assumed* — violations of Rule 16 of the Federal Rules of Criminal Procedure. As a result, there is no Rule 16 basis for overturning the verdict against Mr. Vasquez-Olea.

**III.    Agent Barr's Interrogation and Mr. Vasquez-Olea's Pre-*Miranda* Statements**

*A.    Standard of Review*

Whether a person was "interrogated" or was "in custody" for purposes of *Miranda* is a determination that is reviewed de novo. *United States v. Rodriguez*, 518 F.3d 1072, 1076 (9th Cir. 2008). However, the factual findings underlying a trial court's decision are reviewed for clear error. *United States v. Davis*, 530 F.3d 1069, 1077 (9th Cir. 2008).

*B.    Discussion*

The government concedes that Agent Barr's questions of Mr. Vasquez-Olea when he was apprehended amounted to an "interrogation," and so the only question is whether Mr. Vasquez-Olea was "in custody" for purposes of *Miranda v. Arizona*, 384 U.S. 436 (1966). As a general rule, someone is in police custody for *Miranda* purposes when he reasonably

feels he is not "at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995).

Mr. Vasquez-Olea argues that no reasonable person would feel free to leave under the circumstances of his initial encounter with Agent Barr. The Court agrees. But, "[t]he case books are full of scenarios in which a person is detained by law enforcement officers, is not free to go, but is not 'in custody' for *Miranda* purposes." *United States v. Butler*, 249 F.3d 1094, 1098 (9th Cir. 2001). For example, neither a traffic stop nor a *Terry* stop-and-frisk amount to custody. *Id.* (citing *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)); *see Terry v. Ohio*, 392 U.S. 1 (1968) (holding that an officer may briefly detain individuals based on a reasonable suspicion that a crime is being committed). Additionally, being forced to stop and answer preliminary questions at the United States border does not place the person "in custody" under *Miranda*. *Id.* (citing *United States v. Leasure*, 122 F.3d 837, 840 (9th Cir. 1997)).

Agent Barr's initial contact with Mr. Vasquez-Olea was a *Terry*-stop. Agent Barr had reasonable suspicion that a crime was being committed (illegal entry and presence in the United States) and could briefly detain Mr. Vasquez-Olea and ask him questions to confirm or dispel his suspicion. This conclusion is in line with *United States v. Cervantes*, 421 F.3d 825 (9th Cir. 2005), in which a Border Patrol Agent pursued Cervantes, subdued him, and handcuffed him. *Id.* at 828. The agent then asked Cervantes "about his place of birth, his citizenship, whether he had permission to be in the United States and how he had crossed into the United States." *Id.* at 830. The Ninth Circuit concluded that this was a *Terry*-stop and that the Border Patrol Agent "could ask Cervantes questions 'reasonably related in scope to the justification for their initiation'" without Mirandizing him first. *Id.* (quoting *Terry v. Ohio*, 392 U.S. at 29). Similarly, Agent Barr had reasonable suspicion that Mr. Vasquez-Olea had entered the U.S. illegally, which permitted him to briefly detain Mr. Vasquez-Olea and ask him questions without first giving *Miranda* warnings. Mr. Vasquez-Olea's statements to Agent Barr were therefore properly admitted at trial.

//

**IV.     Sufficiency of the Evidence Regarding Mr. Vasquez-Olea's Alienage**

At the close of the prosecution's case, Mr. Vasquez-Olea moved for acquittal under Federal Rule of Criminal Procedure 29, asserting that the government had failed to prove his alienage. He argued that his own statements were the only evidence of his alienage, and these statements were not corroborated by independent evidence, as required by *United States v. Lopez-Alvarez*, 970 F.2d 583 (9th Cir. 1992). Judge Battaglia denied the motion, finding that the statements were corroborated.

*A.     Standard of Review*

This Court reviews the denial of Mr. Vasquez-Olea's motion for judgment of acquittal de novo. *United States v. Hernandez*, 105 F.3d 1330, 1332 (9th Cir. 1997). But on the question whether there was sufficient evidence to corroborate Mr. Vasquez-Olea's statements, the Court looks for clear error. *Id*. "There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gonzales*, 528 F.3d 1207, 1211 (9th Cir. 2008).

*B.     Discussion*

At trial, the government was required to prove that Mr. Vasquez-Olea was an alien to convict him of illegal entry. *See* 8 U.S.C. § 1325. The government introduced three statements by Mr. Vasquez-Olea admitting that he was a citizen of Mexico, as well as testimony about how the Border Patrol tracked down and discovered Mr. Vasquez-Olea along a known smuggling route. But "[w]hen the primary evidence of citizenship offered by the Government consist of the defendant's own admissions, those admissions require 'some independent corroborating evidence in order to serve as the basis for a conviction.'" *Hernandez*, 105 F.3d at 1332 (quoting *Lopez-Alvarez*, 970 F.2d at 589). The Ninth Circuit adopts a two-prong analysis to determine if a defendant's statement is corroborated. First, the government must introduce corroborating evidence that the "criminal conduct at the core of the offense has occurred." *Lopez-Alvarez*, 970 F.2d at 592. Second, it must introduce

//

1 | "independent evidence tending to establish the trustworthiness of the admissions, unless the
2 | confession is, by virtue of special circumstances, inherently reliable." *Id.*

3 |     In this case, Judge Battaglia's conclusion that the government corroborated Mr.
4 | Vasquez-Lopez's statements is not clearly erroneous. With respect to the first prong of
5 | *Lopez-Alvarez*, the government introduced evidence that two sensors (designed to alert the
6 | Border Patrol to potential illegal entries) were activated early in the morning of the arrest.
7 | Viewing this evidence in the light most favorable to the government, it is reasonable to infer
8 | from these facts that — consistent with Mr. Vasquez-Olea's statements — someone had,
9 | in fact, entered the U.S. illegally. Illegal entry is the "conduct at the core of the offense" in
10 | this case, *see United States v. Corona-Garcia*, 210 F.3d 973, 978 (9th Cir. 2000), thus the
11 | government satisfied *Lopez-Alvarez*'s first prong.

12 |     The second prong is also satisfied because the circumstances of Mr. Vasquez-Olea's
13 | arrest sufficiently corroborate the trustworthiness of his statements regarding his alienage.
14 | Agent Barr arrested Mr. Vasquez-Olea, along with eight others, by following footprints he
15 | discovered after following up on two sensors (one at the border and the other along a known
16 | smuggling trail) which had activated during the early morning. A reasonable factfinder could
17 | conclude that the group of men Agent Barr arrested were the same group of people who
18 | activated the second sensor due to the "solid unbroken line of muddy footprints" leading
19 | away from the second sensor directly to that group. Similarly, it is reasonable to infer that
20 | the same people who activated the first sensor activated the second one because the
21 | sensors were on the same known smuggling trail. Next, a reasonable factfinder could
22 | believe that whoever activated the first sensor (which was on the border) had entered the
23 | U.S. without going through a border checkpoint. Finally, it is reasonable to conclude that a
24 | person entering the U.S. by avoiding a border checkpoint is an alien and does not have
25 | permission to enter the U.S. The Court does not hold that these facts alone could prove Mr.
26 | Vasquez-Olea was an alien, only that these facts are sufficient to corroborate Mr. Vasquez-
27 | Olea's statements that he was an alien, as required by *Lopez-Alvarez*. In other words, the
28 | //

1  government proved Mr. Vasquez-Olea was an alien based on his admissions, corroborated
2  by the circumstances of his arrest.
3      Mr. Vasquez-Olea points out that the Ninth Circuit has "refused to hold that the mode
4  of a defendant's entry is sufficient corroboration of an admission that the defendant is an
5  alien." (Doc. No. 34 at 17, citing *Hernandez*, 105 F.3d at 1333.)  A more recent Ninth Circuit
6  case, however, clarifies that evidence of illegal entry may adequately corroborate a
7  defendant's statements if that evidence comes from independent sources.  *United States*
8  *v. Garcia-Villegas*, 575 F.3d 949, 951 (9th Cir. 2009) ("Here, the mode of entry evidence
9  comes not only from the defendant but also from two independent sources.  That is sufficient
10 to provide the corroboration.") The Court concludes that the facts surrounding Mr. Vasquez-
11 Olea's arrest, proved through evidence independent of his own statements, are sufficient to
12 corroborate those statements.  Therefore, Judge Battaglia could rely on the statements and
13 find that the government had proven beyond a reasonable doubt that Mr. Vasquez-Olea was
14 an alien.

**V.    Conclusion**

Judge Battaglia's verdict is affirmed.

**IT IS SO ORDERED**.

DATED: January 18, 2011

*[signature]*

**HONORABLE LARRY ALAN Burns**
United States District Judge